IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

REBECCA D. SMITH,                    )
                                     )
            Plaintiff,               )
                                     )
v.                                   )        CIVIL ACTION NO. 5:12-06335
                                     )
CAROLYN W. COLVIN,                   )
Acting Commissioner of Social Security,   )
                                     )
            Defendant.               )

## M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security

denying Plaintiff's application for Disability Insurance Benefits (DIB), under Title II of the Social

Security Act, 42 U.S.C. §§ 401-433. This case is presently pending before the Court on Plaintiff's

Motion for Summary Judgment (Document No. 8.), Defendant's Motion for Judgment on the

Pleadings (Document No. 11.), and Plaintiff's Reply. (Document No. 14.) Both parties have

consented in writing to a decision by the United States Magistrate Judge. (Document Nos. 4 and 5.)

The Plaintiff, Rebecca D. Smith, (hereinafter referred to as "Claimant"), filed an application

for DIB on April 28, 2009 (protective filing date), alleging disability as of April 28, 2007, due to

"diabetes, high blood pressure, chronic fatigue, back and knee problems, carpal tunnel, problems

with feet due to diabetes, anxiety, and depression."[1] (Tr. at 15, 62, 128-29, 140.) The claim was

denied initially and on reconsideration. (Tr. at 15, 60-61, 62-64, .) On October 21, 2009, Claimant

requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 78.) The hearing was held

---

[1] The Court notes that Claimant passed away on December 21, 2012, due to complications of left femur fracture due to a motor vehicle accident. (Document No. 10.) Other causes of death included coronary artery disease, hypertension, and morbid obesity. (*Id.*)

on March 15, 2011, before the Honorable Geraldine H. Page. (Tr. at 29-57.) By decision dated April 14, 2011, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 15-24.) The ALJ's decision became the final decision of the Commissioner on August 31, 2012, when the Appeals Council denied Claimant's request for review. (Tr. at 1-8.) On October 9, 2012, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2011). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall

2

v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain

v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether

the claimant is able to perform other forms of substantial gainful activity, considering claimant's

remaining physical and mental capacities and claimant's age, education and prior work experience.

20 C.F.R. §§ 404.1520(f), 416.920(f) (2011). The Commissioner must show two things: (1) that the

claimant, considering claimant's age, education, work experience, skills and physical shortcomings,

has the capacity to perform an alternative job, and (2) that this specific job exists in the national

economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must

follow a special technique at every level in the administrative review process." 20 C.F.R. §§

404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs

and laboratory findings to determine whether the claimant has a medically determinable mental

impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the

impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those

sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional
> limitations is a complex and highly individualized process that requires us to
> consider multiple issues and all relevant evidence to obtain a longitudinal picture of
> your overall degree of functional limitation. We will consider all relevant and
> available clinical signs and laboratory findings, the effects of your symptoms, and
> how your functioning may be affected by factors including, but not limited to,
> chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent
> to which your impairment(s) interferes with your ability to function independently,
> appropriately, effectively, and on a sustained basis. Thus, we will consider such
> factors as the quality and level of your overall functional performance, any episodic
> limitations, the amount of supervision or assistance you require, and the settings in

3

which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder

_____

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2) (2011).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since her alleged onset date, April 28, 2007. (Tr. at 17, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from "obesity, osteoarthritis of the left knee, diabetes mellitus, asthma, anxiety, and depression," which were severe impairments. (Tr. at 17, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 18, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity to perform sedentary work, as follows:

> [T]he [C]laimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except for that which requires crawling; more than frequent fingering; involves concentrated exposure to temperature extremes, excessive humidity, pollutants, or irritants; requires climbing ladders/ropes/scaffolds or working on vibrating surfaces, at unprotected heights, or around hazardous

5

> machinery; involves more than occasional interaction with the general public; more
> than occasional climbing of ramps and stairs, balancing[,] kneeling, stooping and
> crouching; or consists of more than simple, routine, repetitive, unskilled tasks.

(Tr. at 19, Finding No. 5.) At step four, the ALJ found that Claimant was unable to return to her past

relevant work as a retail assistant manager, assistant Head Start teacher, billing clerk, grocery store

cashier/stock clerk, stocker/store laborer, and office clerk. (Tr. at 23, Finding No. 6.) On the basis

of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded

that Claimant could perform work as a dowel inspector, textile folder, and table worker, at the

sedentary and unskilled level of exertion. (Tr. at 23-24, Finding No. 10.) On this basis, benefits were

denied. (Tr. at 24, Finding No. 11.)

Scope of Review

      The sole issue before this Court is whether the final decision of the Commissioner denying

the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was

defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular
> conclusion. It consists of more than a mere scintilla of evidence but may be
> somewhat less than a preponderance. If there is evidence to justify a refusal to direct
> a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d

640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving

conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the

Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the

record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch,

495 F.2d 396, 397 (4th Cir. 1974).

      A careful review of the record reveals the decision of the Commissioner is supported by

substantial evidence.

Claimant's Background

Claimant was born on June 27, 1971, and was 39 years old at the time of the administrative hearing, March 15, 2011. (Tr. at 23, 33, 128.) Claimant had at least a high school education and was able to communicate in English. (Tr. at 23, 34.) In the past, she worked as a retail assistant manager, assistant Head Start teacher, billing clerk, grocery store cashier/stock clerk, stocker/store laborer, and office clerk. (Tr. at 23, 34-36, 52-53.)

Claimant's Challenges to the Commissioner's Decision

Claimant first alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in deciding the claim prematurely and upon an incomplete record. (Document No. 9 at 8.) Claimant states that at the administrative hearing, the ALJ agreed to hold the record open for two weeks to allow Claimant time to submit her most recent treatment records. (Id.) On March 31, 2011, Claimant submitted a written request via facsimile to the ALJ for an additional thirty days for submission of the records. (Id.) On April 14, 2011, however, the ALJ issued a decision unfavorable to Claimant, without having considered the additional medical evidence, which was submitted on April 19, 2011. (Id.) Claimant asserts that the additional medical records contain substantial evidence of her impairments that were not considered by the ALJ. (Id.) Specifically, Claimant asserts that Exhibit 14F, evidences treatment records from a hospitalization in March 2011, due to depression, and that Exhibit 15F evidences treatment records from Southern Highlands from March 2011, which was the most current assessment of her mental status at the time of the hearing. (Id.) She asserts that the records were not available at the time of the hearing because the health care providers had not completed the records. (Id.) Accordingly, Claimant asserts that the

additional medical evidence was probative, relevant, and supported her claim for benefits. (Id.)

In response, the Commissioner asserts that the ALJ did not decide Claimant's case prematurely. (Document No. 11 at 14-16.) The Commissioner first asserts that Claimant should have requested additional time before the record closed on March 30, 2011. (Id. at 14.) Second, the Commissioner asserts that the additional evidence fails to provide any basis to disturb the ALJ's decision. (Id. at 14-15.) The Commissioner notes that Claimant's hospitalization was brief, that she rated her depression and anxiety symptoms as mild in nature the day following her admission, that Dr. Hanley opined that Claimant's anxiety and depression were mild, and that Dr. Hanley's mental status exam was normal with the exception of mildly impaired judgment and insight and fair attention and concentration. (Id.) Additionally, the Commissioner notes that the Southern Highlands records indicate that upon discharge from her inpatient hospitalization, the mental status findings were cumulative of the findings that were before the ALJ. (Id.) Furthermore, Ms. Miller assessed a GAF of 65 indicating only mild symptoms, on several occasions following her discharge, and Claimant reported that she was doing better despite irritability and conflict with her husband. (Id. at 15-16.)

In reply, Claimant asserts that she faxed her request for an extension to the Roanoke Office of Disability Adjudication and Review on March 31, 2011, at 9:21 a.m. (Document No. 14 at 1-2.) She asserts that "[w]hile the better practice would have been to request an additional extension before the end of the day on March 30, 2011, the delay in doing so amounted to less than an hour of time." (Id. at 2.) Claimant asserts that the medical records were delivered via electronic filing to her claim folder on April 19, 2011, five days after the date of the ALJ's decision of April 14, 2011. (Id.) Claimant contends that the records are material to her claim and contain relevant information

about her psychiatric status. (Id. at 2-3.) She notes that on March 9, 2011, Ms. Miller noted that Claimant's mood was hypomanic and that she had a flat affect, and that upon arrival at the Behavioral Health Pavilion of the Virginia's, she had increased depression and anxiety, mood swings, anxiety related to being around people, panic attacks, tearful episodes, shaky feelings, decreased energy, suicidal ideations, and feelings of claustrophobic, hopelessness, helplessness, guilt, and shame. (Id. at 3.)

Second, Claimant alleges that the Commissioner's decision is not supported by substantial evidence of record because the ALJ failed to consider the evidence related to her obesity because she concluded that Claimant had not made a "concerted effort to lose weight." (Document No. 9 at 9.) Claimant asserts that the medical evidence demonstrates that she tried to lose weight but her psychological impairments and medications prescribed to treat those problems complicated that effort, as did the weight itself, which limited her ability to move. (Id.) Claimant contends that the ALJ made a subjective decision based on her own opinions, which was unsupported by the evidence, that Claimant was capable of making a concerted effort. (Id.)

In response, the Commissioner asserts that pursuant to 20 C.F.R. § 404.1529(c)(3), the ALJ was entitled to observe that Claimant did not make a concerted effort to lose weight to improve her functional status. (Document No. 11 at 16-17.) The Commissioner asserts that losing weight under the Regulations would have been considered a measure to relieve pain or other symptoms. (Id. at 16.) The Commissioner notes that the ALJ specifically found Claimant's obesity as a severe impairment at step two and that it failed to meet the requirements of a listed impairment at step three. (Id. at 16-17.) The ALJ further accounted for Claimant's obesity in her RFC assessment when she limited her to performing sedentary work. (Id. at 17.) The Commissioner therefore contends, that

the ALJ properly and appropriately considered Claimant's obesity. (<u>Id.</u>)

Finally, Claimant alleges that the Commissioner's decision is not supported by substantial evidence of record because the ALJ erred in assessing her residual functional capacity. (Document No. 9 at 9-12.) Claimant asserts that pursuant to SSR 02-1p, the ALJ failed to make specific findings as to how Claimant's obesity affected her ability to function. (<u>Id.</u>) Claimant cites portions of the medical record that reflects obesity-related limitations. (<u>Id.</u> at 10.) She first notes Dr. Withrow's July 2, 2009, RFC assessment in which he notes evidence of morbid obesity and painful restrictions in weight bearing joints and that the effect of her obesity was significant. (<u>Id.</u>) She next notes Dr. Rahim's June 19, 2009, observations of chronic changes in her lower extremities, decreased straight leg raise testing due to pain, and an inability to walk on her heels and toes and squat due to pain and size. (<u>Id.</u>) Next she refers to the several instances of lower extremity edema. (<u>Id.</u>) Finally, Claimant notes that Claimant's psychological impairments rendered her unable to lose weight as they were so severe that she did not care about her weight. (<u>Id.</u>) She refers to Mr. Lawson's August 2, 2012, mental assessment in which he assessed serious limitations in many functional areas. (<u>Id.</u> at 10-11.) Claimant notes that she used a knee brace, a cane, and a wheelchair to get around. (<u>Id.</u> at 11.) In conclusion, Claimant asserts that the medical evidence demonstrates that Claimant became depressed after the birth of her second child and that her depression worsened with overeating and significant weight gain. (<u>Id.</u>) She contends that any physical activity would have been affected by the 425 pounds of weight, and that the ALJ improperly noted that restrictions in activities of daily living were "attributable to claimant's perception of her physical limitations." (<u>Id.</u>) She asserts that her weight was not a matter of perception and that the ALJ failed properly to consider her obesity in assessing her RFC. (<u>Id.</u> at 11-12.)

In response, the Commissioner asserts that the ALJ's RFC assessment is supported by the substantial evidence of record, primarily that of Claimant's treating physicians. (Document No. 11 at 17-20.) Claimant notes that Claimant's treating providers, Dr. Thomas and Bluestone Health Center, noted her obesity and lower extremity edema, but never noted any difficulty sitting, standing, or walking. (Id. at 17-18.) The Commissioner notes that her blood pressure and diabetic conditions eventually were controlled with medications. (Id. at 18.) The Commissioner notes that Dr. Rahim observed that Claimant entered his office without any assistive devices and had evidence of only some crepitus of the knees. (Id.) He likewise, did not place any functional limitations on Claimant. (Id. at 19.) The Commissioner asserts that it was reasonable for the ALJ to rely on the only medical source opinion of record, that of Dr. Withrow, a state agency physician, regarding Claimant's ability to function. (Id.) To the extent that Claimant relies on Dr. Withrow's opinion, the Commissioner asserts that the occupations identified by the VE do not require squatting or any other postural activity such as climbing, balancing, stooping, kneeling, crouching, or crawling. (Id.) The Commissioner further asserts that Mr. Lawson's August 2, 2012, mental assessment does not undermine the ALJ's mental RFC assessment because Mr. Lawson did not discuss Claimant's mental functioning during the relevant period at issue in this case. (Id.) Accordingly, the Commissioner asserts that the ALJ's RFC assessment is supported by substantial evidence of record.

In reply, Claimant, again citing SSR 02-1p, asserts that obesity may adversely impact co-existing impairments. (Document No. 14 at 4.) She again cites Dr. Withrow's RFC assessment and notes that he found Claimant's ability to work was impacted significantly by morbid obesity and pain restriction in weight bearing joints. (Id.) He noted significant functional limitation due to arthralgia in lower back and pain in bilateral knees aggravated by weight bearing activity. (Id.) She

asserts that the ALJ improperly focused on Claimant's failed attempts to lose weight rather than on the effect that her obesity had on her ability to function. (Id. at 4-5.) In addition to the medical evidence, Claimant testified that she had poor circulation in her lower extremities and numbness in her fingertips, she kept her legs elevated as much as possible due to swelling, she could not reach her feet to get dressed, she used a wheelchair if she had to walk long distances, and she had no desire to go anywhere or do anything and felt as if her life had been robbed. (Id. at 5.) Accordingly, Claimant asserts that the ALJ failed to consider properly her obesity in assessing her RFC. (Id. at 5-6.)

Analysis.

1. Additional Evidence.

Claimant first alleges that the ALJ erred in issuing her decision prematurely and upon an incomplete record. (Document No. 9 at 8.) The transcript of the administrative hearing demonstrates that the ALJ advised Claimant and her attorney that she would leave the record open until March 30, 2011, for the submission of treatment records from Claimant's hospitalization in March 2011, at the Behavioral Health Pavilion of the Virginia's (Tr. at 366-422.) and from her treatment at Southern Highlands Community Health Center (Tr. at 423-30.) in March 2011. (Tr. at 31-32, 56.) Claimant asserts that she requested an additional 30-day extension, via facsimile, on March 31, 2011. The ALJ issued her decision on April 14, 2011 (Tr. at 14-24.), and the additional treatment records were submitted on April 19, 2011. The Court finds that the record closed on March 30, 2011, and that Claimant's Motion, no matter how slight, was filed beyond the closing of the record. An additional two weeks passed before the ALJ issued her decision and the records had not been submitted. Claimant therefore, had approximately a month before the ALJ issued her decision and

the records were not submitted. Accordingly, the Court finds that the ALJ did not issue her decision prematurely or upon an incomplete record.

To the extent that the additional records are considered "new" evidence, the Court finds that the evidence is neither material nor would have changed the ALJ's decision had the evidence been before her.[3] The treatment records from the Behavioral Health Pavilion indicate that Claimant was hospitalized upon her treating provider's request, Ms. Miller. (Tr. at 366-422, 424.) She was admitted to the Pavilion on March 3, 2011, and on March 4, 2011, Dr. Hanley, Claimant's attending physician, noted that Claimant had experienced increased anxiety resulting from three deaths within her family and thoughts that people were talking and making fun of her due to her obesity. (Tr. at 402.) Nevertheless, Claimant rated her depression at a level four out of ten. (Id.) Her mental status assessment essentially was normal with the exception of fair insight and judgment and poor self-esteem and ego-strength status. (Tr. at 403.) Dr. Hanley noted that Claimant denied suicidal ideation. (Tr. at 379.) Dr. Hanley assessed Claimant's depression and anxiety as only mild in nature. (Id.) Upon her discharge from the Pavilion, Ms. Miller noted on March 9, 2011, that Claimant had a hypomanic mood and flat affect, interacted well, denied suicidal and homicidal ideation, had normal and appropriate thoughts, had fair insight and judgment, had fair memory, and had baseline

---

[3] To justify a remand to consider newly submitted medical evidence, the evidence must meet the requirements of 42 U.S.C. § 405(g) and *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985). In *Borders*, the Fourth Circuit held that newly discovered evidence may warrant a remand to the Commissioner if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed and not simply cumulative; (2) the evidence is material to the extent that the Commissioner's decision "might reasonably have been different" had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant has presented to the remanding court "at least a general showing of the nature" of the newly discovered evidence. *Id.*

13

cognitive functioning. (Tr. at 427.) She assessed a GAF of 65, which was indicative of only mild symptoms.[4] (Id.) On March 30, 2011, Claimant reported that she was doing better and Ms. Miller again assessed a GAF of 65. (Tr. at 430.)

In her decision, the ALJ found that Claimant's depression and anxiety were severe impairments that resulted in mild restrictions in activities of daily living; moderate limitations in social functioning, concentration, persistence, or pace; and no episodes of decompensation. (Tr. at 17-18.) In assessing her RFC, she limited Claimant to simple, routine, repetitive, and unskilled tasks. (Tr. at 19.) There is nothing in the additional treatment records from March 2011, that would suggest a change in the ALJ's decision. The additional evidence, with the exception of the hospitalization which seems mild in nature according to Dr. Hanley's notes, is cumulative of the evidence that was before the ALJ, primarily that of the prior treatment notes from Southern Highlands. Accordingly, the Court declines to find error in the ALJ's failure to consider the additional evidence and finds that the additional evidence was not material to the ALJ's decision.

2. Obesity.

Claimant next alleges that the ALJ erred in failing appropriately to consider her obesity. (Document No. 9 at 9.) Specifically, she takes issue with the ALJ summarily stating that although she was obese, "there is no evidence to suggest that she has made a concerted effort to lose weight in an effort to improve her functional status." (Tr. at 22.) As the Commissioner points out, pursuant

---

[4] The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 61-70 indicates that the person has some mild symptoms or "some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994).

to 20 C.F.R. § 404.1529(c)(3)(vi), in assessing a claimant's pain and credibility, the ALJ is entitled

to consider any measures the claimant utilized to relieve pain or other symptoms. Thus, to the extent

that weight loss would have alleviated Claimant's pain and other symptoms, the ALJ's statement

is an assessment of Claimant's pain and credibility. The ALJ's statement may not be an entirely

accurate assessment, as will be discussed below. Nevertheless, the ALJ's statement was not made

in error as she considered Claimant's obesity. The ALJ specifically found Claimant's obesity as a

severe impairment at step two of the sequential analysis (Tr. at 17.) and found that it did not meet

or equal a listed impairment at step three. (Tr. at 18.) She further considered Claimant's obesity in

assessing her RFC as will be discussed below. (Tr. at 19-23.) Accordingly, the Court finds that the

ALJ's statement regarding Claimant's attempt to lose weight was made in furtherance of her pain

and credibility assessment and in consideration of her obesity.

3. <u>RFC Assessment</u>.

Finally, Claimant alleges that the ALJ improperly considered her obesity in assessing her

RFC. (Document No. 9 at 9-12.) "RFC represents the most that an individual can do despite his or

her limitations or restrictions." <u>See</u> Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996).

Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the

case record," including " the effects of treatment" and the "limitations or restrictions imposed by the

mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of

medication." Looking at all the relevant evidence, the ALJ must consider the claimant's ability to

meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a),

416.945(a) (2011). "This assessment of your remaining capacity for work is not a decision on

whether you are disabled, but is used as the basis for determining the particular types of work you

may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

"Obesity is a complex, chronic disease characterized by excessive accumulation of body fat...generally the result of a combination of factors (e.g., genetic, environmental, behavioral)." Social Security Ruling ("SSR") 02-1p, 2002 WL 34686281, at *2. This Ruling provides guidance concerning the evaluation of obesity in disability claims and discusses the consideration of obesity at the five different levels in the sequential analysis. At steps four and five, an assessment must be made as to how obesity can limit function and upon the claimant's ability to perform "routine movement and necessary physical activity within the work environment." Id. at *6. The Ruling notes that the effects of obesity may not be obvious and that the combined effects of obesity with other impairments may be greater than expected than without obesity. Id.

In her decision, the ALJ noted the requirements of assessing Claimant's obesity and stated that the cumulative effects of Claimant's obesity had been considered at each stage of the sequential analysis. (Tr. at 19, 22.) The ALJ summarized Claimant's testimony, including her limitations, circulatory problems, and stated weight of 425 pounds. (Tr. at 20.) She also summarized the medical evidence of record. (Tr. at 20-22.) Pursuant to SSR 02-1p, the ALJ noted that Claimant's obesity may have had an impact upon co-existing impairments and concluded that after considering her obesity at each step, she was capable of performing sedentary work. (Tr. at 22.) The ALJ also noted that Claimant did not have any restriction in her activities of daily living except those attributable to her perception of physical limitations. (Id.) In reaching her RFC assessment, the ALJ relied on

16

the July 2, 2009, RFC assessment of Dr. Withrow, the state agency consultant, who provided the only opinion of record. (Tr. at 22, 253-60.) Dr. Withrow opined that Claimant was capable of lifting and carrying twenty pounds occasionally and ten pounds frequently; standing and walking two hours in an eight hour day; sitting about six hours in an eight hour day; could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl; could never climb ladders, ropes, or scaffolds or crawl; should avoid concentrated exposure to temperature extremes, wetness, humidity, noise, and environmental irritants; and should avoid even moderate exposure to vibration. (Tr. at 253-60.) Dr. Withrow noted that there was evidence of morbid obesity and painful restrictions in the weight bearing joints. (Tr. at 254.) He opined therefore, that the impact on sustained work effort and mobility were impacted to a significant degree. (Id.) He further opined that the impact of her morbid obesity was significant. (Tr. at 258.)

Claimant places great reliance on Dr. Withrow's statements that the impact of her obesity was significant. The ALJ essentially adopted Dr. Withrow's RFC assessment. Thus, to the extent that Dr. Withrow considered and accommodated Claimant's obesity, the ALJ therefore did too. Notwithstanding Dr. Withrow's opinion, the Court finds that although the ALJ considered Claimant's obesity, she failed to make specific findings and correlations regarding her obesity. The record contains many factors that affected her obesity. The treatment notes from her treating physician, Dr. Thomas, indicate that she had 1+ pitting edema on five occasions, her weight fluctuated from 327 pounds to 365 pounds, and she had increased blood sugars on most visits. (Tr. at 226-30.) The treatment notes from her treating providers at Bluestone Health Center indicate that her weight fluctuated from 402 pounds on September 30, 2009, to 421 pounds on January 10, 2011. (Tr. at 331, 361.) She had edema on at least three occasions and had skin lesions on her lower

17

extremities on January 10, 2011. (Tr. at 340, 362, 435.) Dr. Rahim conducted a consultative evaluation on June 19, 2009, and observed 2+ edema, some crepitus in her knees, and limited lumbar spine motion due to her size. (Tr. at 244.) Additionally, she had negative straight leg raise testing due to pain and her size and she was unable to heel and toe walk or squat due to pain and her size. (Id.) Claimant testified that she wore a knee brace to walk short distances, used a cane, and used a wheelchair when she needed to walk longer distances. (Tr. at 47.) She testified that she wore splints on both wrists and was unable to make a fist due to carpal tunnel syndrome. (Tr. at 48.) She stated that she had difficulty picking up objects because she could not feel her fingertips. (Id.) Regarding personal hygiene, Claimant testified that her husband helped her bathe, get in and out of the tub, shave, get dressed, and put on her shoes and socks because she could not reach her feet. (Tr. at 49.) She further testified that her husband did all the housework and cooking and had done so since the birth of their second child. (Tr. at 50.) Finally, Claimant's mental impairments, including her depression and anxiety, caused her to have no desire to do anything or go anywhere and she felt like her life had been robbed. (Tr. at 46.) She contends that her depression had worsened since the birth of her second child and deepened with overeating and weight gain. It is the combination of all these factors, together with her obesity that affected her ability to function. As Claimant asserts, and as was evidenced by Dr. Rahim's exam, the obesity itself limited her ability to move and therefore, lose the weight. The mental impairments affected her ability to lose the weight. Mr. Lawson's August 2, 2012, was rendered after the ALJ's decision and he did not relate his opinion back to Claimant's mental functioning during the relevant period at issue.

When the ALJ separately considered Claimant's mental impairments and physical impairments, she specifically referenced Claimant's obesity and stated that she considered the affect

of her obesity on her ability to function. The ALJ considered all the evidence of record, and relied on Dr. Withrow's opinion in assessing her RFC, who specifically made findings regarding the impact of Claimant's obesity on her ability to function. Accordingly, the Court finds that although the ALJ's analysis was not as detailed as it could have been regarding the impact of Claimant's obesity on her ability to function, she nevertheless considered Claimant's obesity pursuant to the rules and regulations and that her decision is supported by substantial evidence.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence.  Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Summary Judgment (Document No. 8.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 11.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court..

The Clerk of this Court is directed to transmit a copy of this Memorandum Opinion to counsel of record.

ENTER: March 31, 2014.

R. Clarke VanDervort
United States Magistrate Judge